[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 6 2002
THOMAS K. KAHN
CLERK

————————————————————

No. 00-10323

————————————————————

D.C. Docket No. 96-08294-CV-DMM

D. BRUCE MCMAHAN,
NEMESIS VERITAS, f.k.a.,
Mcmahan & Company,

Plaintiffs-Appellants,

versus

WILLIAM A. TOTO,

Defendant-Appellee.

_____

————————————————————

No. 00-14728

————————————————————

D.C. Docket No. 96-08294 CV-DMM

D. BRUCE MCMAHAN,
NEMESIS VERITAS,
f.k.a. Mcmahan & Company,

Plaintiffs-Appellants-
Cross-Appellees,

versus

WILLIAM A. TOTO,

Defendant-Appellee-
Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(November 6, 2002)


ON PETITION FOR REHEARING


Before CARNES and MARCUS, Circuit Judges, and HAND[*], District Judge.

CARNES, Circuit Judge:

Recent events in this case illustrate that "when we write to a state law issue, we write in faint and disappearing ink." Sultenfuss v. Snow, 35 F.3d 1494, 1504 (11th Cir. 1994) (en banc) (Carnes, J., dissenting). The disappearing ink here is that which we used in our previous opinion in this case to express our holding about whether the Florida Supreme Court would apply its offer of judgment statute, Fla. Stat. § 768.79, in a case tried in Florida but for which the substantive

_____

[*]Honorable William B. Hand, U.S. District Judge for the Southern District of Alabama, sitting by designation.

law of another state governed. There were no Florida decisions on point, and we made an Erie guess that the Florida Supreme Court would not apply the statute in those circumstances. As a result, we reversed the part of the district court's judgment awarding attorney's fees under the statute. McMahan v. Toto, 256 F.3d 1120, 1130-35 (11th Cir. 2001).

## I. THE APPLICABILITY OF THE OFFER OF JUDGMENT STATUTE

Our earlier opinion was barely in the hardback books when the Fourth District Court of Appeal in Florida issued a decision disagreeing with our estimate of Florida law. See BDO Seidman, LLP v. British Car Auctions, Inc., 802 So. 2d 366 (Fla. 4th DCA 2001), review denied, (Fla. Sept. 24, 2002) (No. SC02-96). If the BDO Seidman decision had been around when we issued our first decision in this case, we would have followed it. We would have been compelled to do so because the rule is that, absent a decision from the state supreme court on an issue of state law, we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently. See Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 775 (11th Cir. 2000); Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1120 (11th Cir. 1996); Williams v. Singletary, 78 F.3d 1510, 1515 (11th Cir. 1996). That rule is, if anything, particularly appropriate in Florida,

3

where the state's highest court has held that "[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by [the Florida Supreme Court]." Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992) (quoting Stanfill v. State, 384 So. 2d 141, 143 (Fla. 1980)).

There is no persuasive indication that the Florida Supreme Court would not follow the Fourth District Court of Appeal's BDO Seidman decision on whether its offer of judgment statute, Fla. Stat. § 768.79, applies when the case is governed by the substantive law of another state. The fact that we decided the issue differently is not a persuasive indication that the Florida Supreme Court would agree with us and not with one of its own intermediate appellate courts, which presumably knows more about Florida law than we do. Nor is the fact that one of the three judges dissented on this point in BDO Seidman, 802 So. 2d at 374 (Polen, C.J., dissenting), a persuasive indication that the Florida Supreme Court would decide the issue differently. Two is a majority of three, and a majority of participating judges controls a court's decision. See Fla. R. Jud. Admin. 2.040(a)(1) (2002) ("Three judges shall constitute a panel for and shall consider each case, and the concurrence of a majority of the panel shall be necessary to a decision."). The holding in BDO Seidman is and will remain Florida law until such time, if any, as

4

the Florida Supreme Court has the inclination and opportunity to rule to the contrary.

Of course, at the time we issued our decision in this case we did not have the benefit of the BDO Seidman decision, which was released on the very day we denied the petition for rehearing and suggestion for rehearing en banc in this case. In a diversity case, however, we are bound to follow any changes in a state's decisional law that occur during the case. See Huddleston  v. Dwyer, 322 U.S. 232, 236, 64 S. Ct. 1015, 1018 (1944); see also Technical Coating Applicators, Inc. v. United States Fid. & Guar. Co., 157 F.3d 843, 845 (11th Cir. 1998) ("Intervening state decisions must be given full effect as if the decisions existed during the pendency of the case in district court."). We still have the authority, power, and duty to modify our decision to comport with the latest word from the Florida courts even though we have already denied rehearing, because we have not yet issued the mandate returning the case to the district court.  The case is still before us and we can correct our missed guess about Florida law.

In light of the BDO Seidman decision, we rescind Part II.D of our prior decision, 256 F.3d at 1130, and in its place we hold that Florida's offer of judgment statute,  Fla. Stat. § 768.79, is applicable to cases, like this one, that are

tried in the State of Florida even though the substantive law that governs the case is that of another state.[1]

We turn now to the contentions raised by MBM and McMahan in this appeal that we did not reach in our previous opinion because of our no longer viable holding that Fla. Stat. § 768.79 was inapplicable in this case. Many of these born-again contentions are not sufficiently viable to warrant discussion because they either are so clearly without merit, or they are without merit and are of insufficiently general application, to warrant discussion in a published opinion. Those not mentioned are summarily rejected.

Some of the contentions we did not reach in our earlier opinion do warrant discussion, and some even have merit. For reasons we will discuss, we are going to remand this case for further proceedings relating to the amount of attorney's fees that should be awarded. Accordingly, we also rescind Part III(3) of our prior

---

[1]MBM and McMahan contend we should not reconsider our prior decision because Toto's motion to do so is untimely under 11th Circuit Rules 35-2 and 40-3. Although both rules provide that petitions for rehearing "must be filed within 21 days of entry of judgment" (R. 35-2 addresses petitions for en banc rehearings; R. 40-3 addresses panel rehearings), they also state that counsel can "request extensions of time . . . for the most compelling reasons." We conclude the issuance of BDO Seidman by the Fourth District Court of Appeal of Florida is a "most compelling reason," given that it is directly on point with this case, is controlling, and is directly contrary to our previous decision in this case. Therefore, Toto's motion is not time-barred.

decision, 256 F.3d at 1135, and replace it with the conclusion at the end of this opinion.

## II. THE DETERMINATION OF ENTITLEMENT

### A. WHETHER THE OFFER WAS FACIALLY VALID

MBM and McMahan contend the district court erred by awarding Toto any attorney's fees and costs because his offer was facially defective in several ways. Toto's offer of judgment provided as follows:

> Defendant, WILLIAM A. TOTO, hereby offers pursuant to Fla. Stat. § 45.061 to settle this case for the amount of $100.00 (One Hundred Dollars) upon a stipulation for dismissal, or, alternatively, pursuant to Fla. Stat. § 768.79, at Plaintiff's election, to allow judgment to be taken against him in the total sum of $100.00 (One Hundred Dollars), in full and final resolution of all claims made in this action.

We review de novo a district court's interpretation of a state law. Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1234 (11th Cir. 1995).

First, MBM and McMahan contend the offer was invalid because it failed to state whether it included their claims for attorney's fees and costs and Toto's own claims for costs in his answer.

Florida Rule of Civil Procedure 1.442 governs settlements and provides that a settlement proposal must "state the total amount of the proposal . . . [and] state whether the proposal includes attorney's fees." Fla. R. Civ. P. 1.442(c)(2)(D) and

7

(F). That rule applies to offers made pursuant to § 768.79. See United Servs. Auto. Ass'n v. Behar, 752 So. 2d 663 (Fla. 2d DCA 2000). Where an offer explicitly excludes attorney's fees, it is invalid because the total amount of the proposal is not stated. See State Farm Life Ins. Co. v. Bass, 605 So. 2d 908, 910 (Fla. 3d DCA 1992) (holding offer of judgment stating that attorney's fees and costs were to be determined at a later date did not satisfy Rule 1.442). But where an offer does not explicitly exclude attorney's fees, they are assumed to be included. See Unicare Health Facilities, Inc. v. Mort, 553 So. 2d 159, 161 (Fla. 1989) (stating that "[t]here is an organic right of parties to contract a settlement, which by definition concludes all claims unless the contract of settlement specifies otherwise"); George v. Northcraft, 476 So. 2d 758, 759 (Fla. 5th DCA 1985) ("We think the right to an award of attorney's fees . . . is encompassed in an offer of judgment . . . which fails to mention them specifically or reserve a right to seek them later.").

Toto's offer did not specifically exclude attorney's fees. Further, it stated that it would be "in full and final resolution of all claims made in this action" (emphasis added), and that language is broad enough to cover both MBM and McMahan's claims for costs and attorney's fees, and Toto's own claims for costs. See Liberty Mut. Fire Ins. Co. v. Ramos, 565 So. 2d 798, 800 (Fla. 4th DCA 1990)

(where offer did not specifically mention attorney's fees, holding that "when Ramos made the offer of settlement . . . the amount of money demanded necessarily included attorney's fees. If it were otherwise, the claims would not be terminated, the disputes would not be at an end, and the judicial process would be needed to intervene to resolve the disputed amount of attorney's fees."). Therefore, the offer of judgment was not invalid for failure to cover costs and attorney's fees.

Second, MBM and McMahan contend that Toto's offer was invalid because it failed to state with particularity the amount, if any, applicable to the claim for punitive damages. Both § 768.79 and Rule 1.442 provide that an offer must state with particularity the amount, if any, offered to settle a claim for punitive damages. Fla. Stat. § 768.79(2)(c); Fla. R. Civ. P. 1.442(c)(2)(E). Toto's offer did not specifically mention punitive damages, but it did state that, if accepted, it would be "in full and final resolution of all claims made in this action."

Florida courts have not addressed whether an offer that does not specifically address punitive damages can be valid under § 768.79 and Rule 1.442, but their approach to the attorney's fees requirement of Rule 1.442 is instructive. Rule 1.442(c)(2)(F) does say that offers should state whether they include attorney's fees, yet Florida courts have held those fees are included in offers where they are

9

not mentioned as long as they are not specifically excluded.  See <u>Unicare Health Facilities</u>, 553 So. 2d at 161; <u>Northcraft</u>, 476 So. 2d at 759.

Extending that logic to the context of the punitive damages requirements of § 768.79(2)(c) and Rule 1.442(c)(2)(E)  – and there is no apparent reason we should not – we conclude that Toto's offer satisfied those requirements because it did not explicitly exclude punitive damages from its coverage.   If simple omission were not enough,  the "final resolution" language of the offer is.  The offer was not invalid under § 768.79 and Rule 1.442.

B.  WHETHER THE OFFER WAS MADE IN BAD FAITH

If an offer satisfies the requirements of § 768.79(1)-(6), as this one did, "[t]he sole basis on which a court can disallow an entitlement to an award of fees is if it determines that [the] offer was not made in good faith."  <u>Levine v. Harris</u>, 791 So. 2d 1175, 1177 (Fla. 4th DCA 2001); <u>see also</u> § 768.79(7)(a) ("If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith.  In such case, the court may disallow an award of costs and attorney's fees.").  The district court found that  Toto's offer was made in good faith because "an appellate court of New York had . . . held that the Releasors had not breached their contracts," which means Toto "was reasonable in concluding that Plaintiffs could not make out their

10

remaining claim of tortious interference, breach of contract being an essential element of that claim."

MBM and McMahan contend Toto's offer was made in bad faith because, at the time Toto made his offer, he had no reasonable basis for making it. At that time, although the New York court had entered its decision in <u>McMahan & Co. v. Bass</u>, 250 A.D.2d 460 (N.Y. App. Div. 1998), the district court had since denied Toto's motion for summary judgment on the tortious interference claim based on the <u>Bass</u> decision. That means, according to MBM and McMahan, "the validity of appellants' claim had been confirmed by the trial court, Toto was facing millions of dollars of potential liability and appellants had incurred thousands of dollars in legal fees incurred during three years of litigation" so "the $100 Offer could not be <u>bona fide</u>."

We review only for clear error the district court's finding that Toto acted in good faith, <u>Turner v. Orr</u>, 759 F.2d 817, 821 (11th Cir. 1985), and "[t]he burden is upon the offeree to prove that the offeror acted without good faith," <u>Levine</u>, 791 So. 2d at 1178 (citing <u>Schmidt v. Fortner</u>, 629 So. 2d 1036, 1041 n.6 (Fla. 4th DCA 1993), <u>approved by</u> <u>TGI Friday's, Inc. v. Dvorak</u>, 663 So. 2d 606, 613 (Fla. 1995)). Here, the offerees did not come close to carrying their burden of proof in the

district court, and they are even further from convincing us that the district court clearly erred in deciding this issue against them.

Toto offered $100.00, a nominal amount. Although "nominal offers are suspect where they are not based on any assessment of liability and damages," Fox v. McCaw Cellular Communications of Fla., Inc., 745 So. 2d 330, 332 (Fla. 4th DCA 1998), they can be valid if the offerors have "a reasonable basis at the time of the offer to conclude that their exposure was nominal." Id. at 333. The good faith requirement of § 768.79(7)(a) does not "demand that an offeror necessarily possess, at the time he makes an offer or demand under the statute, the kind or quantum of evidence needed to support a judgment. The obligation of good faith merely insists that the offeror have some reasonable foundation on which to base an offer." Schmidt, 629 So. 2d at 1039.

The argument of MBM and McMahon that Toto lacked any reasonable basis for believing that he would prevail against them ignores the inconvenient fact that he did prevail against them. To accept in the same case in which a party did prevail the notion that there was no reasonable basis for that party prevailing would require self-contradiction on a scale that we are unwilling to consider. It is MBM and McMahon's argument that is illogical, and thus unreasonable.

12

## III. THE DETERMINATION OF AMOUNT

We review only for abuse of discretion the amount of attorney's fees awarded by the district court. <u>See</u> <u>Farley v. Nationwide Mut. Ins. Co.</u>, 197 F.3d 1322, 1340 (11th Cir. 1999). The district court awarded Toto $260,034.29 in attorney's fees and costs. MBM and McMahan challenge that award on several grounds, only some of which merit discussion here.

### A. WHETHER THE REQUESTED AMOUNT WAS INFLATED

MBM and McMahan contend that Toto's calculations of the amount of attorney's fees to which he was entitled was inflated by more than $70,000. They assert that on March 6, 2000, Toto's counsel discounted all of his attorney's fees to $136,103.54. They claim Toto's fee application sought that amount plus $51,394.76 in subsequent invoices, and that those figures totaled $187,498.30, not the $260,447.72 requested by Toto.

Toto disagrees with MBM and McMahan about the March 6, 2000 discount and, therefore, about the total amount sought. According to Toto, as of March 6, 2000, he had paid $71,730 in attorney's fees and had an outstanding balance of $151,226.16. He asserts that only the outstanding balance was discounted by ten percent (from $151,226.16 to $136,103.54), and that the $71,730 he had already paid was not affected by that discount. He says that for services up to March 6,

13

2000, he sought in his fee application $71,730 plus $136,103.54, which totals

$207,833.54. Additionally, he sought $51,394.76 in subsequent invoices for fees

incurred thereafter.

Our review of the Verified Bill of Fees and Costs shows that, as of March 6,

2000, Toto had been billed for attorney's fees and costs in the amount of

$222,956.16 ($1,125.00 for May 1999; $1,941.04 for June 1999; $74,682.71 for

July, August, September, and October 1999; and $145,207.41 for November and

December 1999). The Verified Bill states that "[o]n March 6, 2000 . . . [Toto's

attorney] agreed . . . to discount the <u>then outstanding balance</u> of $151,226.16 by ten

percent to $136,103.54." (emphasis added). The term "outstanding balance"

refers to the amount unpaid as of that date, <u>see</u> Black's Law Dictionary 1129 (7th

ed. 1999); it does not refer to fees already paid. Therefore, any fees that were

already paid were not affected by the ten-percent discount. Although the Verified

Bill did not explicitly state that Toto had already paid $71,730, the implication was

clear, because  the $222,956.16 of attorney's fees and costs would reduce to an

unpaid balance of $151,226.16 only if Toto had paid the difference of $71,730.

Toto did not give up his claim to the full amount of the $71,730 he had already

paid.

14

Adding the $71,730 that Toto had already paid to the $136,103.54 that resulted from the ten percent discount of the unpaid balance, and then adding to that sum the $48,282.26 of attorney's fees and costs from January, February, and March 2000, and the $3,112.50 anticipated for April 2000, the total comes to $259,228.30. Because the district court had already awarded taxable costs of $4,799.33 pursuant to 28 U.S.C. § 1920, that amount is subtracted from $259,228.30, and the balance is $254,428.97.

In the verified bill, Toto sought $260,447.72. That figure is erroneous according to our calculations, because it is $6,018.75 more than the $254,428.97 to which Toto was entitled. (There is no reason to think that the error is anything other than a mathematical one.) We will remand to the district court for it to reduce the amount of attorney's fees awarded Toto by $ 6,018.75.

## B. WHETHER THE AWARD EXCEEDED THE REQUEST

MBM and McMahan contend the district court's award of any attorney's fees beyond the $152,268.71 incurred as of December 21, 1999 was in error because Toto's counsel voluntarily limited the fee application to those incurred by that date. Toto's attorney's affidavit, submitted as part of the fee application, stated that he "cut off the claimed time immediately following the entry of the

15

summary judgment [on December 21, 1999], even though the client has incurred fees to pursue the issue of entitlement to fees which is fairly recoverable."

That language could be plausibly interpreted in two ways. It could be construed to mean that any fees incurred from December 21, 1999 to any time in the future were "cut off," in the way MBM and McMahan insist. Or it could be read to mean that Toto was not going to seek fees incurred from December 21, 1999, to the date the affidavit was executed, January 20, 2000. Toto claims he initially decided to forego fees incurred during that period "in order to simplify the fee application – and in the hope that making such allowance would obviate a fight on reasonableness – which obviously has not happened." As a result of the dispute over fees, Toto now wants to recover fees incurred during that period and afterwards.

Although the district court did not explicitly address this issue, it is clear from its order that the court read the fee application as not limiting the recovery of attorney's fees to those incurred before December 21, 1999, because the amount awarded was $260,034.29, well in excess of the $152,268.71 incurred as of that date. Given the ambiguity of the attorney's fee affidavit, the district court did not abuse its discretion in allowing Toto to recover attorney's fees incurred after January 20, 2000. But the attorney's affidavit clearly excluded any fees incurred

16

from December 21, 1999 to January 20, 2000, and Toto never amended his application to seek those fees. Therefore, fees from that period should not have been awarded, and we remand to the district court to determine that amount and subtract it from the attorney's fees award.

### C. WHETHER FEES FOR LITIGATING FEES WERE PROPER

Determining that time spent calculating the amount of attorney's fees due was not recoverable, the district court lowered Toto's fees request by $905, which is the amount of attorney's fees billed for "preparing the fees application." MBM and McMahan contend the district court did not go far enough. They say that it should also have excluded any fees for litigating the issue of how much fees were due, which they calculate would have reduced the award by another $51,973.75.

The Florida Supreme Court has held that, while attorney's fees incurred for litigating the issue of entitlement to attorney's fees are recoverable, fees incurred for litigating the amount of attorney's fees are not. State Farm Fire & Cas. Co. v. Palma, 629 So. 2d 830, 833 (Fla. 1993). In the context of a contingency fee agreement, the Palma court explained that the work involved in litigating the amount of attorney's fees "inures solely to the attorney's benefit and cannot be considered services rendered in procuring full payment of the judgment." Id. It noted the contrary federal court practice of allowing recovery of attorney's fees for

17

litigating both entitlement and amount issues, and it distinguished that practice based on different statutory purposes. The purpose underlying most federal statutory fee authorizations, the Court explained, is "to encourage attorneys to represent indigent clients," and allowing recovery for fees from litigating the amount of fees comports with that purpose. Id. In contrast, the Florida statute involved in that case has a different purpose – "to discourage the contesting of valid claims . . . and to reimburse successful insureds for their attorney's fees," which led the Florida Supreme Court to the conclusion that the statute's purpose would not be furthered by permitting the award of attorney's fees incurred in litigating the amount of them due. Id. (internal quotation marks and citation omitted).

In this case we deal with attorney's fees awarded pursuant to § 768.79, the purpose of which is "to 'terminate all claims, end disputes, and obviate the need for further intervention of the judicial process' by encouraging parties to exercise their 'organic right . . . to contract a settlement, which by definition concludes all claims unless the contract of settlement specifies otherwise.'" MGR Equip. Corp. v. Wilson Ice Enters., Inc., 731 So. 2d 1262, 1264 (Fla. 1999) (quoting Unicare Health Facilities, Inc. v. Mort, 553 So. 2d 159, 161 (Fla. 1989)). That purpose does not include encouraging the representation of indigents and does not support

18

an award of attorney's fees incurred litigating the amount of those fees. See also Diaz v. Santa Fe Healthcare, Inc., 642 So. 2d 765, 766 (Fla. 1st DCA 1994) (holding that where at least one of the purposes of a statute awarding attorney's fees "is to encourage attorneys to represent indigent persons . . . the trial court has discretion . . . to make a fee award . . . which encompasses the time spent establishing the amount of the fee").

Toto attempts to distinguish Palma by noting that it concerned a contingency fee agreement, whereas "[t]his is an hourly fee case [and Toto's attorneys] will get paid . . . regardless of any fee recovery." We are unpersuaded by that argument, because the Florida Supreme Court has explained that whether attorney's fees should be awarded for litigating the amount of fees due depends on the purpose of the statute under which the fees are sought; it does not depend on the method of calculating them. Palma, 629 So. 2d at 833.

The district court should have decreased Toto's attorney's fee award by the amount spent litigating the amount of attorney's fees to which he was entitled. MBM and McMahan claim that amount is $51,973.75, but they do not tell us how they arrived at that figure. On remand the district court should determine the amount of attorney's fees incurred by Toto in litigating the amount of attorney's fees, and subtract that amount from the fees to be awarded to him.

19

# IV . CONCLUSION

We RESCIND Part II.D and Part III(3) of our prior decision, 256 F.3d at 1130-35, and replace them with the relevant parts of this opinion.

We REMAND this case to the district court for further proceedings in which it should: 1) decrease the attorney's fees award by $6,018.75 (Part III.A, supra); 2) determine the amount of attorney's fees incurred from December 21, 1999 to January 20, 2000, and subtract that amount from the attorney's fees award (Part III.B, supra); 3) determine the amount of attorney's fees incurred by Toto in litigating the amount of attorney's fees, and subtract that amount from the attorney's fees award (Part III.C, supra);

We AFFIRM all other aspects of the district court's orders and judgment.