[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 19, 2011
JOHN LEY
CLERK

_____

No. 10-12554

_____

D.C. Docket No. 0:09-cv-60902-UU

ALL FAMILY CLINIC OF DAYTONA BEACH, INC.,
on behalf of itself and all others similarly situated,
d.b.a. Florida Medical Associates,

Plaintiff - Appellee,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 19, 2011)

Before BARKETT and WILSON,[*] Circuit Judges, and WALTER,[**] Judge.

PER CURIAM:

State Farm Mutual Automobile Insurance Co. ("State Farm") appeals the district court's grant of summary judgment in favor of All Family Clinic of Daytona Beach, Inc. ("the Clinic").[1]

State Farm reimbursed the Clinic for MRI services provided to State Farm's insured under a personal injury protection ("PIP") auto insurance policy. Florida's "No-Fault" law, Fla. Stat. § 627.736, provides the methodology by which State Farm, as a PIP insurer, may limit reimbursement for MRI services. The parties agree that the only issue on appeal is how to construe the provision in the No-Fault law allowing insurers to "limit reimbursement to 80 percent of . . . 200 percent of <u>the allowable amount under the participating physicians schedule of Medicare Part B</u>." Fla. Stat. § 627.736(5)(a)(2)(f) (emphasis added).[2] State Farm

---

[*] Judge Wilson was a member of the original panel but did not participate in this decision, which is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

[**] Honorable Donald E. Walter, District Judge for the Western District of Louisiana, sitting by designation.

[1] "This court reviews a district court's grant of summary judgment *de novo*, applying the same legal standards used by the district court." <u>United States v. Fort</u>, 638 F.3d 1334, 1337 (11th Cir. 2011).

[2] The statute reads in pertinent part:

The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges: . . . f. For all other medical services, supplies, and care, 200

2

claims that the statute's explicit incorporation of Medicare's "participating physicians schedule" necessarily includes Medicare's "[s]pecial rule for imaging services," 42 U.S.C. § 1395w-4(b)(4), which in certain circumstances reduces the amount that Medicare reimburses for MRIs.  The Clinic claims that the statute refers to the schedule alone without any reduction and that State Farm has thus underpaid the Clinic.

The district court awarded summary judgment to the Clinic on the plain text of the statute.  See All Family Clinic of Daytona Beach, Inc. v. State Farm Mut. Auto. Ins. Co., 685 F. Supp. 2d 1297 (S.D. Fla. 2010).  On appeal, the parties jointly moved for certification to the Florida Supreme Court, agreeing that no Florida appellate court had ruled on the issue.  Shortly after oral argument, however, the District Court of Appeal for Florida's Second District addressed precisely this issue, concluding that the statute's plain text did not allow a reduction under Medicare's special rule for imaging services reimbursements.  See Nationwide Mut. Fire Ins. Co. v. AFO Imaging, Inc., ___ So. 3d ___, 2011 WL

percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

3

2622311 (Fla. Dist. Ct. App. July 6, 2011).

On this record, we are compelled to follow the District Court of Appeal and affirm summary judgment. "[T]he rule is that, absent a decision from the state supreme court on an issue of state law, we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently." McMahan v. Toto, 311 F.3d 1077, 1080 (11th Cir. 2002). Even assuming arguendo that we would have decided the issue in State Farm's favor, the AFO Imaging Court's holding "is and will remain Florida law until such time, if any, as the Florida Supreme Court has the inclination and opportunity to rule to the contrary." Id. at 1080.

In McMahan, this Court had already decided an issue of Florida law and denied a petition for rehearing before the Florida District Court of Appeal issued a decision contrary to our ruling on the same issue. Id. at 1080. Because we had not yet issued the mandate, we held that we had "the authority, power, and duty to modify our decision to comport with the latest word from the Florida courts" and so reversed course. Id. at 1081. Similarly here, although we agree that the Florida Supreme Court could rule contrary to the appellate court's AFO Imaging decision, State Farm does not offer and we cannot find a "persuasive indication" that it

4

actually "<u>would</u>" change the law.  <u>Id.</u> at 1080 (emphasis added).

Accordingly, we follow the rule given by the intermediate appellate court and **AFFIRM** the district court's grant of summary judgment to the Clinic.

**AFFIRMED**.