[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11491
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-24142-PAS


FIVE FOR ENTERTAINMENT S.A.,
d.b.a. Five Live Entertainment,

                                        Plaintiff - Counter Defendant,

DIEGO HERNAN DE IRAOLA,

                                        Plaintiff - Counter Defendant -
                                        Appellant,

                        versus


EL CARTEL RECORDS, INC.,
RAMON LUIS AYALA RODRIGUEZ,
a.k.a. Daddy Yankee,
ICARO SERVICES, INC.,
d.b.a. Icaro Booking Services,
EDGAR BALDIRI MARTINEZ,

                                        Defendants - Counter
                                        Claimants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 14, 2018)

Before WILSON, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

Diego Hernan De Iraola appeals from the district court's order denying his motion for attorney's fees following an unaccepted offer of judgment made under Florida law. He argues that the district court erred in concluding that the offer of judgment was invalid under Florida law and thus that he was not entitled to attorney's fees. For the reasons set forth below, we disagree with De Iraola and affirm the district court.

## I.    BACKGROUND[1]

Recording artist Ramon Luis Ayala Rodriguez, known as "Daddy Yankee," and his record company, El Cartel Records, Inc. ("El Cartel"), entered into an agreement with Five for Entertainment S.A. ("Five Live") under which Daddy Yankee would perform several concerts in Argentina, which Five Live would

---

[1] A number of opinions have set forth this case's factual background, including one from this Court. *See Five For Entm't S.A. v. El Cartel Records, Inc.*, 646 F. App'x 714 (11th Cir. 2016) (unpublished). Here, we review only the facts relevant to the issues in this appeal.

produce.  Following a disagreement over the payment of fees, the concerts were cancelled.  Daddy Yankee publicly blamed the cancelled concerts on Five Live.

Five Live and De Iraola, Five Live's president and managing shareholder, sued Daddy Yankee, El Cartel, his booking agent, and the booking agent's president (collectively, "Daddy Yankee") in federal court.  As relevant here, Five Live and De Iraola alleged that Daddy Yankee had made defamatory statements about them.  Daddy Yankee moved for summary judgment on the defamation claims.

On August 9, 2013, when the summary judgment motion was pending, De Iraola served Daddy Yankee with an offer of judgment pursuant to Florida law.[2] The offer stated that De Iraola would "settle all claims . . . in the above styled action" for $100,000.  Demand for Judgment at 1 (Doc. 326-1 at 18).[3]  The offer also included a general release, which discharged:

> [A]ny and all manner of action and actions . . . which said Releasor ever had, now has, or shall or may have against said Releasee for, upon, or by reason of any matter, cause, thing, event, occurrence or fact whatsoever, known or unknown, foreseen or unforeseen from the beginning of the world to the day of this Release, regarding or relating to any claims or cause of action asserted in, or which arises from any of the facts or transactions that form the basis for all claims asserted in the action[.]

---

[2] De Iraola served a separate offer on each defendant, but the language of each offer was the same.

[3] Citations to "Doc." refer to docket entries in the district court record in this case.

*Id.* at 5 (Doc. 326-1 at 22).  The offer indicated that it would remain open for thirty days.

While the offer was pending, the district court issued an order on Daddy Yankee's motion for summary judgment as to nine statements Five Live and De Iraola had alleged were defamatory.  The district court granted the motion as to two of the statements, concluding they were not defamatory as a matter of law, and denied it as to the others.  On the same day, Five Live and De Iraola sought leave to supplement the record with newly-discovered evidence of a 2011 radio interview in which Daddy Yankee had made additional defamatory statements.  On September 4, 2013, days before the offer of judgment would expire, the district court granted Five Live and De Iraola's motion, permitting them to use the newly-discovered recording at trial.

Daddy Yankee never responded to the offer of judgment and the case proceeded to trial.  In the pretrial order, the district court listed the defamatory statements on which De Iraola intended to proceed at trial.  That list included three statements contained in the 2011 radio interview.  At trial, the jury's verdict form required it to make findings as to specific defamatory statements made by Daddy Yankee, including three for which the newly-discovered recording was the sole source.  The jury found for De Iraola on all of the defamation claims and awarded him $2,000,000 in compensatory damages.

Following trial, De Iraola moved for his attorney's fees based on the unaccepted offer of judgment. The magistrate judge determined that the offer of judgment was valid under Florida law and recommended that the relevant portion of the motion be granted. Daddy Yankee objected to the recommendation, arguing that the offer of judgment was invalid under Florida law. The district court agreed, concluding that the changing circumstances of the case while the offer was pending rendered it ambiguous. De Iraola appealed.

## II.    DISCUSSION

We review the district court's determinations of state law in a diversity case *de novo*. *McMahan v. Toto*, 311 F.3d 1077, 1081 (11th Cir. 2002). Here, De Iraola argues that the offer of judgment was valid under Florida law and thus that the district court erred in determining that he was not entitled to attorney's fees following the lapsed offer. We disagree.

Under Florida law, a plaintiff who makes an offer of judgment that is not accepted by the defendant within thirty days is entitled to recover his attorney's fees and costs if he ultimately recovers a judgment at least twenty-five percent greater than the offer. Fla. Stat. § 768.79. The specific requirements for such an offer are set forth in Florida Statutes § 768.79, the Florida offer of judgment

statute.[4]  Because the statute is "a sanction for an unreasonable rejection of a good faith offer of settlement," *Segundo v. Reid*, 20 So. 3d 933, 936 (Fla. Dist. Ct. App. 2009), displacing the general rule that each party pays its own fees, its requirements "should be construed in favor of the party to be sanctioned," *Hibbard ex rel. Carr v. McGraw*, 918 So. 2d 967, 971 (Fla. Dist. Ct. App. 2005).

As the statute imposes a sanction, Florida courts have held that settlement proposals under the offer of judgment statute must be "as specific as possible, leaving no ambiguities so that the recipient can fully evaluate its terms and conditions."  *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1079 (Fla. 2006) (internal quotation marks omitted).  Therefore, if an "ambiguity could reasonably affect the offeree's decision on whether to accept the proposal for settlement," the offer is invalid.  *Carey-All Transp., Inc. v. Newby*, 989 So. 2d 1201, 1206 (Fla. Dist. Ct. App. 2008) (internal quotation marks omitted).

Here, as the district court determined, the offer of judgment was invalid because it was ambiguous in light of the changing circumstances of the case while the offer was pending.  The offer stated that it would settle "all claims . . . in the above styled action."  The attached release, meanwhile, contained broader language, releasing:

---

[4] "This circuit has found § 768.79 to be substantive law for *Erie* purposes."  *Jones v. U.S. All., L.L.C.*, 494 F.3d 1306, 1309 (11th Cir. 2007).  Because we are sitting in diversity, we apply Florida law governing offers of judgment.

6

> [A]ny and all . . . actions . . . which said Releasor ever had, now has or shall or may have . . . regarding or relating to any claims or cause of action asserted in, or which arises from any of the facts or transactions that form the basis for all claims asserted in the action[.]

At the time the offer was served, it was clear that the claims "asserted in the action" referred to those defamation claims included in the original complaint. But when the district court allowed Five Live and De Iraola to rely on the newly-discovered recording at trial, days before the offer of judgment would expire, it became ambiguous as to whether the release included those newly-added claims. Indeed, at the time the offer was served, no facts had been alleged in the complaint about any statements made in the 2011 recording.

De Iraola argues that the language of the release was not ambiguous because the newly-discovered defamatory statements were not new claims. Therefore, he argues, the added statements were included in the initial offer's release of "all claims." According to De Iraola, even the district court acknowledged that the added statements constituted the same claim when it allowed De Iraola and Five Live to rely on the recording after determining Daddy Yankee would not suffer prejudice from the addition of that evidence days before trial. However, whether the addition of the new evidence would prejudice Daddy Yankee and whether those statements constituted new claims are distinct inquiries. Allowing evidence of the new recording did not prejudice Daddy Yankee because the statements made in the recording were substantively similar to the previously-alleged statements, so

7

Daddy Yankee would not need to prepare defenses specific to the new statements. That is not to say, though, that all of the statements constituted a single claim and thus that they were contemplated by the original release.

As the district court explained, under Florida law, "each communication of the same defamatory matter by the same defamer . . . is a separate and distinct publication, for which a separate cause of action arises." *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 174 (Fla. Dist. Ct. App. 2016) (quoting Restatement (Second) of Torts § 577A cmt. a (1977)).  Therefore, each statement made in the recording was the basis for an additional defamation cause of action. Indeed, the jury made individual determinations as to three statements that derived solely from the 2011 recording, any one of which could have independently supported a defamation claim.  The district court properly determined that the original offer's reference to "all claims" did not include the statements from the 2011 recording.

De Iraola argues that even if the added claims were distinct from those asserted in the original complaint, the release encompassed future claims, and thus the newly-added claims were still released by the original offer.  Specifically, De Iraola points to the language releasing any claims:  "Releasor ever had, now has, or shall or may have . . . relating to any claims or cause of action asserted in, or which arises from any of the facts or transactions that form the basis for all claims

asserted in the action." This language, however, limits the claims released to those that arise from the facts underlying the claims asserted in the action. As we explained above, the claims asserted in the action changed while the offer was pending. Accordingly, after the district court permitted Five Live and De Iraola to add new claims, the release became ambiguous as to whether those newly-added claims would be released by the offer of judgment.[5] Certainly, ambiguity as to whether multiple claims would be released by a settlement "could reasonably affect the offeree's decision on whether to accept the proposal." *Carey-All Transp., Inc.*, 989 So. 2d at 1206 (internal quotation marks omitted). Therefore, the district court was correct in determining that the offer was invalid and that De Iraola was not entitled to attorney's fees under the Florida offer of judgment statute.

### III.    CONCLUSION

For these reasons, we affirm the district court's order denying De Iraola's motion for attorney's fees.

**AFFIRMED.**

---

[5] As the district court also noted, De Iraola could have written the release more clearly to cover pending claims as well those that might arise later, rather than limiting the included claims to those arising from or related to those pled in the original complaint. Given that De Iraola decided to limit the release to those claims arising from or related to the claims asserted in the action, the release was ambiguous for purposes of the offer of judgment statute.