**Niurka DE VARONA, Plaintiff,**

v.

**DISCOUNT AUTO PARTS, LLC, Defendant.**

Case No. 12–20714–CIV.

United States District Court, S.D. Florida.

March 21, 2013.

Judd Gordon Rosen, Glen Z. Goldberg, Michael T. Flanagan, Goldberg & Rosen PA, Miami, FL, for Plaintiff.

Gregory Morgen Cesarano, Emmet Jay Schwartzman, Carlton Fields, Michele Aimee Vargas, Armor Correctional Health Services, Inc., Miami, FL, for Defendant.

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

EDWIN G. TORRES, United States Magistrate Judge.

This matter is before the Court on Plaintiff's Motion to Compel Settlement Check. [D.E. 110]. We have carefully considered the motion, Defendant's Response in Opposition [D.E. 114], and Plaintiff's reply thereto [D.E. 115], plus the record in this case. We no longer have

subject matter jurisdiction to grant any relief on Plaintiff's motion to compel. Accordingly, the motion must be denied.

## I. BACKGROUND

Plaintiff sued Defendant over a slip and fall on Defendant's premises. Plaintiff alleged that she and her husband drove to Defendant's auto parts store to buy a replacement part for the bus that they use to operate their transportation service. As Plaintiff exited the passenger side of her Mercedes SUV, she opened the door, stepped down onto oil in the parking lot, fell and fractured her ankle. She sued for tort damages in state court.

On February 21, 2012, Defendant removed the action to federal court based upon diversity jurisdiction. The case proceeded through contentious discovery and motion practice, during which it became apparent that the lawyers' personal animosity interfered, in part, with the speedy and expeditious resolution of the action. [D.E. 55, 75, 85, 87].

After mediation proved unsuccessful, and while Defendant's summary judgment motion was pending, on or about October 23, 2012, Defendant served an offer of judgment under Rule 68 and Fla. Stat. § 768.79. Plaintiff considered the offer and accepted it on November 19, 2012. [D.E. 83, 104]. The pending motions were thus promptly denied as moot and the Court closed the case for administrative purposes on November 21, 2012. [D.E. 107].

Shortly thereafter, the parties filed a joint stipulated dismissal with prejudice that the parties "hereby stipulate and agree to entry of the attached Final Order of Dismissal with Prejudice, and that the claims of Niurka De Varona against Defendant, Discount Auto Parts, LLC, be dismissed with prejudice, each party to bear its own attorneys' fees and costs, if any. Defendant, Discount Auto Parts,

LLC, however, requests that the Court retain jurisdiction for the limited purpose of adjudicating an unresolved dispute that arose in the course of discovery over funds paid by the Internal Revenue Service in error to Plaintiff, Niurka De Varona instead of to counsel for Defendant, Discount Auto Parts, LLC, Carlton Fields, P.A. Carlton Fields prepaid the IRS for Ms. De Varona's federal income tax returns pursuant to an authorization provided by Ms. De Varona." [D.E. 108].

The Court then entered a Final Order of Dismissal with prejudice that incorporated the parties' proposed language "that the claims of Plaintiff, Niurka De Varona against Defendant, Discount Auto Parts, LLC be, and the same are, hereby DISMISSED with prejudice, with each party to bear its respective attorney's fees and costs, and in accordance with the terms contained in said Stipulation, which are hereby APPROVED and made a part of this order. The Court RESERVES JURISDICTION for the limited purpose of adjudicating the dispute over the funds paid by the Internal Revenue Service in error to Plaintiff, Niurka De Varona instead of to counsel for Defendant, Discount Auto Parts, LLC, Carlton Fields, P.A., as more fully described in the Stipulation for Final Order of Dismissal with Prejudice." [D.E. 109].

Significantly, the Court did not reserve jurisdiction for any other purpose, such as general supervision over the terms of the settlement agreement. Nor did the parties request any such broader reservation, or request that the Court delay entry of the Dismissal Order pending final closure of the settlement terms. The parties requested only a limited reservation of jurisdiction, which the Court granted.

One would think that this resolution of unnecessarily contentious, sometimes un-

duly personal, litigation would bring closure and peace. *Cf.* Fed.R.Civ.P. 68, Adv. Comte. Notes, 1946 Amdts. ("These provisions should serve to encourage settlements and avoid protracted litigation."). Regrettably, that proved not to be the case. What followed was yet another round of sparring on the lawyers' part that leaves their clients still unwhole; Plaintiff still has not received her settlement payment and Defendant is still incurring attorneys' fees.

Plaintiff's counsel "started it," to paraphrase Defendant's counsel, after Plaintiff timely received the settlement check from Defendant. It is undisputed that Defendant performed its primary obligation under the settlement by delivering the settlement payment, a $50.000 check, to Plaintiff's counsel. Though one would normally expect that check, upon receipt, to be immediately deposited in counsel's trust account, Plaintiff's counsel neglected to make sure that happened. Instead, somehow the check was "misplaced" or "misfiled." In other words, counsel lost the check. After some time passed when the check did not turn up, Plaintiff's counsel then emailed Defense counsel on or about December 20, 2012, to request a new check. Defense counsel, who was undoubtedly focused on other things and taking time off during the imminent holiday season, advised that he would get back to Plaintiff after conferring with his client.

Two weeks later, hearing nothing back, Plaintiff's counsel again communicated with Defense counsel and threatened to "move to compel" if Defendant did not issue a new settlement check. That missive, not surprisingly, was met with hostility from Defendant's counsel could who took umbrage to Plaintiff's counsel's ultimatums following counsel's own neglect, and advised that a new settlement check would be forthcoming only after certain specific conditions were met including payment for all fees and costs incurred by counsel losing the original check before any new settlement check was reissued. Two days later, Defendant delivered its "invoice" for the expenditures caused by the lost check, which ridiculously demanded reimbursement for ten hours in attorney and administrative time incurred in the process, plus the $26.00 stop payment fee, for a total of $1,516.00.

Not surprisingly, Plaintiff's counsel rejected that imprudent demand. The pending motion to compel followed, in which Plaintiff seeks an Order compelling delivery of a new settlement check in exchange for reimbursement only of the stop payment fee incurred by Defendant, plus attorneys' fees in Plaintiff's favor for having to seek court intervention to force Defendant to carry out the administrative task of issuing a new settlement check.

Defendant responded in opposition, arguing that the Court lacked jurisdiction to do anything in response to the motion, and then arguing that Plaintiff's counsel was the one acting unreasonably by not negotiating over the matter to achieve a resolution without court intervention. Plaintiff replied, arguing that the Court had jurisdiction based upon Florida law and rejecting as disingenuous Defendant's purported offers to negotiate a solution.

Since the filing of the motion, the matter has still not been resolved. The matter is thus, regrettably, ripe for disposition.

## II. ANALYSIS

Before addressing the merits of the dispute, we pause to point out how damaging the lawyers' conduct is beyond the contours of this case. The public perception of lawyers has never been worse. Over thirty years ago, 36% of the public viewed lawyers as having great prestige. Now,

only stockbrokers and politicians (most of whom are lawyers) fare worse in the public's eyes. That sad statistic is amusing, but not when one considers the impact that public distrust of lawyers has on the public's view of the justice system. Forty-one percent of the public now doubts the fairness of the civil justice system.[1] That growing distrust of the justice system poses a threat to the long-term viability and independence of the judiciary and the justice system as a whole, despite the essential and fundamental role that the judicial system must play to sustain a constitutional republic.

This case illustrates, in part, a cause of the problem. The lawyers' personal distrust and lack of respect for each other as professionals has unduly prejudiced the most important consumers of the justice system—the litigants. Neither party can be very happy with the present circumstance. It may seem to them that carelessness and petty squabbling have interfered with the orderly and efficient resolution of the litigation. They are undoubtedly right. It may seem to them that this problem would not have occurred had the lawyers acted more professionally and carefully in their handling of the clients' matters. They would, again, be right. And it may seem to them that the Court should be able to solve the problem that their lawyers created. They would ordinarily be right in that respect as well. If we had the power to fix the problem, we would order Defendant to issue a new settlement check and have the lawyers jointly reimburse their clients for the wasted time and effort. But in this case, this Court is powerless to intervene by operation of law. With much justification, neither litigant will be satisfied with that outcome.

The solution to avoid future blots on lawyers and the justice system must lie with the lawyers who practice in, and make a living from, the legal *profession*. The lawyers in this case may not appreciate this point, but we hope others will. "Men at some time are the masters of their fates: The fault, dear Brutus, is not in our stars, but in ourselves, . . ."[2]

Turning to the merits of this motion, there are two real issues. First, do we have jurisdiction to grant any relief to either side (as Defendant claims), and, second, what relief should be entered on the merits to resolve the problem created originally by Plaintiff's lawyer's neglect? Our review of the governing law leads us to conclude that Defendant's first argument disposes of the motion because, in fact, by operation of law (and specifically the manner in which the lawyers chose to document their settlement) the Court now has been divested of jurisdiction to grant *any* relief. If these lawyers cannot muster the ability to resolve this dispute by putting their clients' interests ahead of their own, Plaintiff is required to file a new civil action in state court for breach of contract.

### A. There is no Federal Jurisdiction to Enforce the Agreement

We begin our discussion of the dispositive issue by reviewing the general principles of federal law that we must apply. The federal courts are courts of limited jurisdiction. We possess only the power strictly authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The

---

**1.** *See* D. Papke, *Law & Popular Culture: Text, Notes and Questions* 77–79 (2012); Blog of Legal Times, *Survey Finds Widespread Doubt About Fairness of the Courts* (Sept. 19, 2012).

**2.** W. Shakespeare, *Julius Caesar,* Act I, sec. 2.

court's jurisdiction cannot be expanded merely through judicial decree. *Id.* "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).

*Kokkonen* squarely stands for the general proposition that with the underlying claims in this litigation now being settled and dismissed, this Court's jurisdiction would ordinarily be extinguished. Any contractual dispute over the mechanics of enforcement of the settlement are ordinarily governed by state law. That dispute gives rise to no claims arising under federal law. And a state law breach of contract claim that is required to enforce the settlement must be filed in state court absent an independent basis for federal subject matter jurisdiction. None exists here: diversity of jurisdiction is lacking because the amount in dispute ($50,000) does not exceed the statutory minimum ($75,000). Accordingly, that dispute would normally be beyond the limited jurisdiction that this federal court would have. Florida state court, which does have general jurisdiction over these parties and these claims, would be the appropriate forum to litigate such a dispute, assuming that counsel wished to pursue it instead of immediately resolving the dispute.

There are narrow exceptions, however, to this general rule. The only relevant exception that could apply here is the doctrine of ancillary jurisdiction—that has been codified in part through federal statute, 28 U.S.C. § 1367—which "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* at 378, 114 S.Ct. 1673. Justice Scalia's opinion for the Court in *Kokkonen* explained that the narrow purpose for exercising ancillary juris-

diction is "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80, 114 S.Ct. 1673. The Court emphasized that the doctrine's limits are quite narrow. "[N]o controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Id.* (quoting *Fulton Nat'l Bank of Atlanta v. Hozier,* 267 U.S. 276, 280, 45 S.Ct. 261, 69 L.Ed. 609 (1925)).

As other cases have described it, ancillary jurisdiction "rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety," *Jenkins v. Weinshienk,* 670 F.2d 915, 918 (10th Cir.1982), and "may extend to claims having a factual and logical dependence on 'the primary lawsuit.'" *Peacock v. Thomas,* 516 U.S. 349, 355, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (citations omitted). "The basis of the doctrine of ancillary jurisdiction is the practical need 'to protect legal rights or effectively to resolve an entire, logically entwined lawsuit.'" *Id.* (quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)). Ancillary jurisdiction is thus not a permissive doctrine; rather, it represents the "constitutional limits of federal judicial power." *Owen Equip.,* 437 U.S. at 371, 98 S.Ct. 2396.

Clearly, the holding in *Kokkonen* precludes the exercise of ancillary jurisdiction to enforce the terms of a settlement agreement that resolved an action in federal court. The Eleventh Circuit expressly recognized that recently in *Anago Franchising, Inc. v. Shaz, LLC,* 677 F.3d 1272, 1278 (11th Cir.2012) ("In *Kokkonen,* the Supreme Court recognized that the enforcement of a settlement agreement falls outside of the scope of ancillary jurisdic-

tion of the federal courts, even when the court had jurisdiction to hear the underlying case.").

The facts at issue before the Supreme Court in *Kokkonen* illustrate this principle. An action arising under state law was filed and removed to federal court on diversity jurisdiction. The parties settled the case in the middle of trial, which was then memorialized with a "Stipulation and Order of Dismissal with Prejudice" that was filed with the Court under Rule 41(a)(1)(ii). The district judge signed the stipulation and Ordered the case dismissed. "The Stipulation and Order did not reserve jurisdiction in the District Court to enforce the settlement agreement; indeed, it did not so much as refer to the settlement agreement." *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673. Subsequently, the parties became embroiled in a dispute over the return of certain files to the defendant under the settlement agreement. The defendant filed a motion to enforce the agreement before the same federal district court that adjudicated the action. Over the plaintiff's objection, the district judge granted the motion based upon its "inherent power," which the Court of Appeals later affirmed. The Supreme Court, however, unanimously reversed the Court of Appeals and held that the district court had no basis to exercise jurisdiction to enforce the parties' settlement agreement. *Id.* at 381–82, 114 S.Ct. 1673. In the Court's view, "[t]he suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute." *Id.*

This case, on the surface, appears to require a straightforward application of the holding in *Kokkonen*. The district court dismissed this case through the same type of "stipulation for order of dismissal with prejudice" at issue in *Kokkonen*. Unlike *Kokkonen*, however, the parties here did agree to request a reservation of jurisdiction by the district court; but, *only* with regard to a dispute regarding specific funds paid by the Internal Revenue Service to Plaintiff instead of to Defendant. The Court's Order expressly granted that request and reserved jurisdiction to this extent. [D.E. 109]. Neither the parties nor the Court, however, ever requested or received a broad reservation of jurisdiction to enforce any other aspect of the parties' settlement agreement. That is quite significant under *Kokkonen* because the power to exercise jurisdiction over any dispute other than the IRS payment issue was lost upon the entry of the Court's dismissal Order.

■ What we have now, therefore, is basically the same type of dispute as in *Kokkonen* for which we no longer have independent subject matter jurisdiction to adjudicate. As part of the settlement agreement, Defendant was to tender a check payable to Plaintiff in exchange for dismissal of the action. Defendant performed, but Plaintiff's counsel requires another round of performance due to his neglect. Defendant may argue that it performed and, thus, no breach can be found. Plaintiff may argue that intervening events rendered Defendant's performance ineffectual and still due and owing. In other words, the parties find themselves with a breach of contract dispute that a state court would have to resolve because we no longer have any jurisdiction over these parties or this claim. "The facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential

to the conduct of federal-court business."
*Id.* at 381, 114 S.Ct. 1673.

Plaintiff tries to distinguish the effect of *Kokkonen* in this case based primarily on two arguments, which we turn to now.

## B. *The Effect of the Florida Offer of Judgment Statute*

The first point that Plaintiff makes is that the Court's jurisdiction can be founded on Fla. Stat. § 768.79, Florida's offer of judgment statute that was the underlying vehicle through which the settlement was executed. Section 768.79 provides that "[u]pon filing of both the offer and acceptance, the court has full jurisdiction to enforce the terms of the settlement agreement." Based on this provision, Plaintiff argues that the acceptance of the offer of judgment binds the parties and gives this Court jurisdiction to enforce the terms of the settlement agreement even though the Court's Order of Dismissal did not expressly state that the Court would retain jurisdiction over the issue. In other words, Plaintiff argues that jurisdiction can be "presumed" from the acceptance of the offer of judgment and the plain language of the statute.

We know that section 768.79, which includes both procedural and substantive provisions, is generally regarded as "substantive" for *Erie*[3] purposes. *See, e.g., Menchise v. Akerman Senterfitt,* 532 F.3d 1146, 1150 (11th Cir.2008); *Jones v. United Space Alliance, LLC,* 494 F.3d 1306, 1309 (11th Cir.2007); *McMahan v. Toto,* 256 F.3d 1120, 1132 (11th Cir.2001), *modified in part,* 311 F.3d 1077 (11th Cir. 2002). Thus, a federal court presiding over a claim arising under Florida law may apply and enforce the statute's fee provisions to award attorneys' fees even absent a corollary federal statute or rule. *E.g.,*

*Menchise,* 532 F.3d at 1151–52 (affirming fee award under section 768.79 and rejecting preemption arguments founded on bankruptcy practice or Rule 68).

The reason *why* we ordinarily apply substantive statutes like section 768.79 under the *Erie* doctrine is significant here: "In essence, the intent of that decision was to insure that, in all cases *where a federal court is exercising jurisdiction* solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co. of N.Y. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) (emphasis added).

*Erie* does not require, however, that a state substantive provision trumps everything in a diversity case. "The *Erie* rule has never been invoked to void a Federal Rule. It is true that there have been cases where [the Supreme] Court had held applicable a state rule in the face of an argument that the situation was governed by one of the Federal Rules. But the holding of each such case was not that *Erie* commanded displacement of a Federal Rule by an inconsistent state rule, but rather that the scope of the Federal Rule was not as broad as the losing party urged, and therefore, there being no Federal Rule which covered the point in dispute, *Erie* commanded the enforcement of state law." *Hanna v. Plumer,* 380 U.S. 460, 470, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

These two fundamental limitations on the *Erie* doctrine squarely apply in this circumstance. First, to apply a state law substantive provision a federal

**3.** *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

court must be properly exercising diversity jurisdiction. Absent a proper exercise of diversity jurisdiction as conferred by federal law, any state law purporting to do so, even within the auspices of an otherwise "substantive" provision, cannot be enforced. Under *Kokkonen*, this Court's proper exercise of diversity jurisdiction ended when it entered its Rule 41 dismissal Order and relinquished any further jurisdiction over the case. There is no federal statute that we can then rely upon to confer jurisdiction to enforce section 768.79 once federal diversity jurisdiction was extinguished.

▮▮▮ And it is a basic and long-standing principle of federal law that state law cannot confer subject matter jurisdiction upon a federal court. *See Ex parte McNiel*, 80 U.S. 236, 243, 13 Wall. 236, 20 L.Ed. 624 (1871) ("It is urged further that a State law could not give jurisdiction to the District Court. *That is true. A State law cannot give jurisdiction to any Federal court*; but that is not a question in this case. A State law may give a substantial right of such a character that where there is no impediment arising from the residence of the parties, the right may be enforced in the proper Federal tribunal whether it be a court of equity, of admiralty, or of common law. *The statute in such cases does not confer the jurisdiction.*

That exists already, and it is invoked to give effect to the right by applying the appropriate remedy.") (emphasis added); *cf. Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096–97 (11th Cir.1994) (rejecting argument seeking to broadly expand diversity jurisdiction in removal case in part because that "approach would allow state rules of procedure to determine when federal jurisdiction existed. This approach could lead to inconsistent application of federal jurisdictional rules.").

From this we can readily conclude that Plaintiff's reliance on section 768.79 to confer continuing jurisdiction to enforce the settlement agreement is a non-starter. As there is no longer any independent federal jurisdictional basis to grant any relief, the state jurisdictional provision is inconsequential for our purposes.[4]

Second, applying section 768.79 here (to the extent it can be read to confer federal jurisdiction at all) then creates a direct conflict between that state law provision and a Federal Rule of Civil Procedure. The Federal Rules permit a plaintiff to voluntarily dismiss his claims by filing a notice of dismissal, either unilaterally before the opposing party has served an answer or a motion for summary judgment, Fed.R.Civ.P. 41(a)(1)(A)(i), or jointly by stipulation with all other interested parties, *id.* at 41(a)(1)(A)(ii).[5] With certain

---

4. We note that the jurisdictional provision in the statute is not a remarkable one, when one considers that the primary audience that the Florida legislature was addressing were state courts—which are, of course, courts of general jurisdiction that have plenary power to grant broad relief and "nothing is intended to be outside their jurisdiction except that which clearly and specially appears so to be." *English v. McCrary*, 348 So.2d 293, 297 (Fla. 1977).

5. Rule 41 provides specifically:
   (a) **Voluntary Dismissal.**
   (1) *By the Plaintiff.*

**(A)** *Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:*
*(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or*
(ii) a stipulation of dismissal signed by all parties who have appeared.

\* \* \*

*(2) By Court Order; Effect.* Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court

enumerated exceptions, court approval is not required. A Rule 41(a)(1)(A)(i) "dismissal is effective immediately upon the filing of a written notice of dismissal, and no subsequent court order is required." *Matthews v. Gaither*, 902 F.2d 877, 880 (11th Cir.1990). The Eleventh Circuit has recently held that the same is true of a Rule 41(a)(1)(A)(ii) dismissal by stipulation of the parties:

> Therefore, we find that the plain language of Rule 41(a)(1)(A)(ii) requires that a stipulation filed pursuant to that subsection is self-executing and dismisses the case upon its becoming effective. The stipulation becomes effective upon filing unless it explicitly conditions its effectiveness on a subsequent occurrence. *District courts need not and may not take action after the stipulation becomes effective because the stipulation dismisses the case and divests the district court of jurisdiction.*

*Anago*, 677 F.3d at 1278 (emphasis added).

Thus, when the stipulated dismissal was filed in this case the District Court was immediately divested of further jurisdiction over the claims or the parties except in so far as the parties conditioned that effectiveness. Here, that condition was limited to the dispute over the IRS payment. The District Judge's retention of jurisdiction in its Order of dismissal was limited accordingly to that specific request. Neither the parties, nor the District Judge *sua sponte*, sought or reserved jurisdiction over any other matter. The effect of Rule 41 in this case is crystal clear; there is no further jurisdiction to enforce any other aspect of the parties' settlement agreement, as *Anago* itself illustrates.

In *Anago*, parties litigating a franchise contract in federal court settled their dispute in mediation and entered into a final mediated settlement agreement. *Id.* at 1274. Upon receiving notice of the settlement, the district judge (who had been exercising diversity jurisdiction over the parties and the case) administratively closed the case and requested that the parties file "a Stipulation for Final Order of Dismissal within fifteen days." *Id.* The court noted that after the stipulation was filed, it would enter an order dismissing the case with prejudice. *Id.* Pursuant to the their settlement agreement, the parties then filed a "Stipulation for Dismissal with Prejudice." The Stipulation referenced Federal Rule of Civil Procedure "41(a)(1)(A)(ii) and (2)," stated that all parties agreed to dismiss the entire matter with prejudice, and asserted "that the Court shall reserve jurisdiction to enforce the settlement between the parties pursuant to the terms contained therein." *Id.* The parties also filed a "Joint Motion for Entry of Final Judgment by Consent." *Id.*

The district judge, however, never entered an order dismissing the case with prejudice as the parties had suggested. Weeks later, a dispute arose over alleged breaches of the confidentiality provisions of the agreement, and a refusal to make settlement payments as a result. *Id.* at 1275. At that time the district judge signed the consent final judgment that had been attached to the parties' joint motion, but the final judgment did not mention the stipulated dismissal or the settlement agreement, and it did not explicitly dismiss the case. After months of non-payment went by, the aggrieved parties filed a motion with the district court to compel compliance with the settlement agreement. The court found in the first instance that it had continuing jurisdiction to consider the

---

order, on terms that the court considers proper. . . .

Fed.R.Civ.P. 41(a) (emphasis supplied).

motion because the district judge had never dismissed the case—it had only administratively closed it. And because the final judgment did not order the clerk to dismiss the case, the Court concluded that the case had not been properly dismissed, notwithstanding the parties' filing of the Stipulation of Dismissal. After an evidentiary hearing was conducted by the magistrate judge, the motion to compel enforcement was denied on the merits, *not* on the basis of lack of jurisdiction. *Id.*

An appeal followed. The Eleventh Circuit, exercising its independent obligation to determine whether it had jurisdiction over any aspect of the appeal, considered whether the district judge erred in not taking into account the effect of the parties' stipulated dismissal filed prior to the court entering its consent final judgment. *Id.* In recognizing the natural effect of a Rule 41 dismissal balanced against the pronouncement in *Kokkonen* that a district court could retain jurisdiction to enforce a settlement agreement upon dismissal of a case, the Eleventh Circuit held that, because a court has "no power" to enter orders after a Rule 41(a)(1)(A)(ii) stipulation becomes effective, "the court must enter the order retaining jurisdiction *before* the stipulation becomes effective." *Id.* at 1280 (emphasis added). Specifically, the Court explained that:

> [F]or a district court to retain jurisdiction over a settlement agreement where the parties dismiss the case by filing a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii), either (1) the district court must issue the order retaining jurisdiction under *Kokkonen* prior to the filing of the stipulation, or (2) the parties must condition the effectiveness of the stipulation on the district court's entry of an order retaining jurisdiction.

*Id.*

In *Anago,* that did not happen. The district court's entry of a consent final judgment followed weeks after the filing of the Rule 41 stipulated dismissal. That stipulation referenced continuing jurisdiction to enforce the agreement, but never specifically requested that the district court do so as a condition of its effectiveness. Nor did the district judge retain jurisdiction prior to the filing of that stipulation. Therefore, the Court held, the district court had never properly retained jurisdiction to enforce the parties' settlement agreement. The case was remanded for dismissal for lack of jurisdiction. *Id.* at 1281.

Compared with those facts, Plaintiff's case for jurisdiction in this dispute over the lost settlement check is far weaker. The stipulated dismissal at issue did request retention of jurisdiction, but only for a specific purpose and not for general enforcement of the agreement. The Court's Order of dismissal did not retain jurisdiction for any broader purpose either before the stipulation or simultaneously with the entry of the Order. Jurisdiction was thus lost for any other purpose at that point in time, and there was no ambiguity in the record as to whether the case had in fact been properly closed, as there was in *Anago.* As a result, applying the analysis of the issue involving far more compelling facts in *Anago,* we do not have any jurisdiction in this straightforward case to enforce this settlement agreement pursuant to Rule 41.

Plaintiff cannot, therefore, rely on a Florida substantive provision, section 768.79, to get around the effective application of Rule 41. Applying Florida law in this instance would indeed result in a "direct collision" between the Florida statute and a federal rule that squarely addresses federal procedure and is based upon federal jurisdictional principles. As was the case in *Hanna,* the clash between Rule 41

and section 768.79 would be "unavoidable." 380 U.S. at 470, 85 S.Ct. 1136. And there could not be any argument in that instance that the conflicting federal rule fell outside the proper scope of the Rules Enabling Act or beyond the power of the Congress under the Constitution. The conflicting (and clearly procedural) federal rule would have to govern. *See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 130 S.Ct. 1431, 1437, 1442–44, 176 L.Ed.2d 311 (2010) (if Federal Rule answers procedural question in issue, "it governs" unless it is invalid, and it is not invalid if it is designed to be procedural regardless of any incidental effect upon state-created rights); *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 428 n. 7, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (declaring it "settled" that a valid, on-point Federal Rule "applies regardless of contrary state law").

For all these reasons, Plaintiff has not persuaded us that we can distinguish *Kokkonen* or *Anago* in this case based upon the effect of Florida state law. The limiting principles in these controlling decisions preclude us from exercising any post-dismissal enforcement jurisdiction now, even one as simple as granting a motion to compel delivery of a new settlement check. Had the parties intended for this Court to assist in the enforcement of the settlement, they could have strictly followed the procedure required in *Anago;* having chosen to paper the settlement differently, they are now bound by that decision. Any enforcement proceeding necessary arising out of the parties' settlement must be presented to a court of general jurisdiction—Florida circuit court.

### C. *The Effect of Federal Rule 1*

In a last-ditch attempt to persuade us to ignore this jurisdictional problem, Plaintiff points out that Rule 41 should not be read in derogation of the principles set forth in Rule 1—"[The Rules] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1. Armed with the common-sense notion that a simple order compelling delivery of a new settlement check would solve this entire problem, Plaintiff argues that such relief should still be available in this unique case.

We cannot, however, apply Rule 1's aspirational objectives in a manner that supersedes another, more specific, Rule that requires a different result. *See, e.g., Central States, S.E. & S.W. Areas Pension Fund v. Central Cartage Co.,* 69 F.3d 1312, 1314–15 (7th Cir.1995) ("the need to consider the objectives in Fed. R.Civ.P. 1 when construing all of the rules does not justify disregarding limitations explicitly built into them"). Rule 41 proscribes the Court's authority and jurisdiction over dismissal of an action. That Rule's limitations must be enforced notwithstanding any apparent conflict with the goals of Rule 1. Moreover, Rule 41's limitations are based on principles of limited federal jurisdiction, which flow directly from the constitutional limitations found in Article III. *See Kokkonen,* 511 U.S. at 377–78, 114 S.Ct. 1673 (interpreting Rule 41 to enforce the principle that federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.] It is to be presumed that a cause lies outside this limited jurisdiction . . . .") (citations omitted).

Hence, as appealing as Plaintiff's position may be to bring about closure to this matter sooner rather than later, Rule 1 cannot deflect the jurisdictional challenge to our ability to do anything about this problem. We regrettably are left with no choice but to deny any relief at this point

and leave the matter for the unlucky state court judge who will have to deal with it. Defendant's position is legally correct, but Defendant should take no comfort in the result. Absent a more level-headed approach by the lawyers in this case, and specifically by Defendant's counsel, Defendant will likely feel the greater brunt of the impact when all is said and done.

## III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel Settlement Check [**D.E. 110**] is **DENIED** for lack of subject matter jurisdiction.