KENNETH A. MARRA, United States District Judge
This action arises out of Plaintiff Alejandro Zendejas's purchase of a horse named Vorst from Defendant Eugenie H. Redman. Following a jury trial, the jury unanimously found in favor of Defendants Redman and Colin J. Syquia on all counts. On August 18, 2017, judgment was entered in Defendants' favor and against Plaintiff. (DE 257.) Now pending before the Court is Plaintiff's Motion for Judgment as a Matter of Law and in the Alternative Motion for a New Trial (DE 270). Defendants Eugenie H. Redman and Colin J. Syquia both filed responses (DE 268 & 302), and Plaintiff filed a reply (DE 307). Also pending before the Court are Defendants Redman's and Syquia's respective Motions for Entitlement to Attorney's Fees and Costs ("Motions for Fee Entitlement") (DE 263 & 264). Plaintiff filed responses to the Motions for Fee Entitlement (DE 67 & 268), and Defendants filed replies (DE 277 & 281). The Court has considered the arguments of counsel and is otherwise fully advised in the premises. For the reasons stated below, the Motion for Judgment as a Matter of Law and in the Alternative Motion for a New Trial is denied, and the Motions for Fee Entitlement are granted.
I. DISCUSSION
A. Motion for Judgment as a Matter of Law
Plaintiff argues that he is entitled to judgment in his favor on certain claims and affirmative defenses under Rule 50(b) of the Federal Rules of Civil Procedure. The standard for granting a renewed motion for judgment as a matter *1252 of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion under 50(a). Chaney v. City of Orlando , 483 F.3d 1221, 1227 (11th Cir. 2007). The standard of review for a district court to grant the motion is whether, "when the facts and inferences are viewed in the light most favorable to the opposing party, they 'point so strongly and overwhelmingly in favor of one party the Court believes that reasonable men could not arrive at a contrary verdict.' " United States v. Vahlco Corp. , 720 F.2d 885, 889 (11th Cir. 1983) (quoting Boeing Co. v. Shipman , 411 F.2d 365, 374 (5th Cir. 1969) ).[1] A court must "affirm the jury verdict unless there is no legal basis upon which the jury could have found for [the plaintiff]." Telecom Tech. Servs., Inc. v. Rolm Co. , 388 F.3d 820, 830 (11th Cir. 2004).
Plaintiff contends that he is entitled to judgment as a matter of law on Counts XI and XII of the First Amended Complaint, which allege claims for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq. ("FDUTPA"), based upon his argument that he established at trial that the bill of sale for the horse violated various provisions of Florida's Administrative Code. Under the Code, only "[a] violation of any provision of Chapter 5H-26, F.A.C., resulting in actual damages to a person , shall be considered an unfair and deceptive trade practice pursuant to Chapter 501, Part II, F.S." Fla. Admin. Code R. 5H-26.003 (emphasis added). Here, the jury found that Plaintiff did not suffer actual damages as a result of the violations. (DE 254.) Hence, the jury's finding that the bill of sale violated Florida's Administrative Code does not mean that Plaintiff is entitled to judgment as a matter of law on the FDUTPA claims.
Alternatively, Plaintiff argues that the jury's finding that Plaintiff did not suffer damages is speculative and unreasonable because Plaintiff's expert opined that the horse was worth only $30,000 on the date of the transaction but Plaintiff paid $250,000. However, contrary to Plaintiff's suggestion otherwise, there was competing evidence presented to the jury that the horse was worth $250,000 (which was the purchase price) on the date of sale. (DE 290, Leone Test., Trial Tr., vol. 4 124: 2-4.) The jury was free to reject Plaintiff's expert's opinion in favor of Peter Leone, Defendants' expert, who opined that the horse was worth $250,000 on the date of purchase. Thus, there was sufficient evidence in the record for a reasonable juror to conclude that Plaintiff suffered no damages and that therefore Plaintiff was not entitled to a jury verdict on the FDUTPA claims in Counts XI and XII of the First Amended Complaint.
Next, Plaintiff argues that he is entitled to judgment in his favor because Syquia provided medical information about the horse but Defendants allegedly did not accurately disclose all information responsive to the inquiry, in violation of FAC Rule 5H-26.003(12). Plaintiff contends that the jury's finding to the contrary did not have a legally sufficient evidentiary basis.
Specifically, Plaintiff argues that the horse's back and gluteal soreness and receipt of pain medicine should have been disclosed because that information would have been responsive to the questions that *1253 Dr. Gomez asked Syquia regarding any "history of recurring lameness" and/or "any other pertinent medical history." Plaintiff posits that when Syquia responded "no" to the questions whether the horse had a "history of recurring lameness" or "any other pertinent medical history," Defendants violated Rule 5H-26.003(12) by not giving more information. Plaintiff emphasizes that Redman admitted that she failed to disclose certain insurance policy medical exclusions and that Dr. Ted Vlahos testimony's indicates that administration of the drug Bute to the horse demonstrates the horse's lameness.
However, there was also testimony presented at trial, including the testimony of Redman and Syquia, from which a jury could have reasonably concluded that the horse's soreness and the associated medicine were not sufficient to constitute "recurring lameness" or "medical history." (DE 288, Redman Test., Trial Tr., vol. 2 117:4-5 ("[The horse] did not have any ongoing serious problems. He had minor aches and pains."); id. 27: 7-9 ("Any horse that's doing that type of jumping is going to have some [gluteal] muscle soreness."); id. 23:7-13 ("I use these [chiropractic, acupuncture and laser therapies for the horse] as preventive medicine, because I know that when the animal is competing at a high level physically, that they have muscle soreness, or if they pull a -- they sprain something, or the gluteal muscles hurt or whatever. So if you catch these things before they become really very painful, then you prevent more serious injuries that take longer to heal."); id. 37:13-17 ("[H]orses and human athletes, whenever they're performing at a high level, soreness occurs, or strain occurs, and it's temporary, it gets treated, it doesn't cause a problem, and then next year he doesn't have it ..."); id. 39: 17-19 ("And the sore back was not an ongoing thing. It came up here and there, but it did not -- was not anything that presented itself every single time."); id. 100:3-6 ("The vets told me it wasn't that important and would not affect the horse in the long-term. This was a temporary situation that was easily taken care of with new shoes and packing."); DE 289, Syquia Test., Trial Tr., vol. 3 249:22-24 ("After certain competitions, after many days in a row, as is customary in our industry, I gave the horse one Bute tablet after competition."); id. 84:21-25 ("[A]t times after competition, after maybe the second day, it was customary that all my horses would get one Bute tablet in their feed after large competitions just as a nice way to go to sleep, yeah, after a hard week's of competition, like if you went to the gym and did a hard workout ...."); id. 14:10-11 ("I never found Vorst to have a sore back that was a concern to me."). It was within the province of the jury to credit the testimony of Redman and Syquia regarding the horse's soreness and the use of medication over the competing evidence.
Lastly, the Court notes that because the jury did not find for Plaintiff on any of the claims, the issue of the sufficiency of the evidence (or alleged lack thereof) supporting Defendants' affirmative defenses is moot. For the reasons stated above, the Court finds that the evidence does not point so strongly and overwhelmingly in favor of Plaintiff that reasonable jurors could not have arrived at a verdict again him, and therefore Plaintiff is not entitled to judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure.
B. Motion for New Trial
Plaintiff argues that he is entitled to a new trial under Rule 59 of the Federal Rules of Civil Procedure because the jury verdict is against the clear weight of the evidence. The law is clear that a *1254 district court may grant a motion for a new trial only if the jury verdict is contrary to the great weight of the evidence. Ard v. Sw. Forest Indus. , 849 F.2d 517, 520 (11th Cir. 1988). "This rule does not, however, grant a license to the trial judge merely to substitute his judgment for that of the jury on questions of fact. Consequently, when considering a motion for new trial, the trial judge may weigh the evidence, but it is proper to grant the motion only if the verdict is against the great, not just the greater, weight of the evidence." Id.
Plaintiff argues (in a summary fashion) that the jury's findings are against the great weight of the evidence given the alleged evidence that Defendants failed to disclose material health issues about the horse prior to the purchase. Based on the evidence presented at trial, which is discussed in part in Section I.A supra , the Court finds that it was reasonable and not against the great weight of the evidence for a jury to conclude that Plaintiff failed to meet his burden and to return a verdict for Defendants. There is no basis to decide that the jury's verdict was contrary to the great weight of the evidence.
Plaintiff also contends that a new trial is warranted based upon the misconduct of opposing counsel in using arguments that eluded to Plaintiff's wealth. According to Plaintiff, defense counsel emphasized that Plaintiff spent millions of dollars acquiring horses in his opening and closing arguments. Although Plaintiff did not press this issue in his reply brief, the Court will consider the issue on the merits.
The Court of Appeals for the Eleventh Circuit has indicated a "reluctan[ce] to set aside a jury verdict because of an argument made by counsel during closing arguments." Vineyard v. Cty. of Murray, Ga. , 990 F.2d 1207, 1214 (11th Cir. 1993). "Statements made in oral arguments must be plainly unwarranted and clearly injurious to constitute reversible error." Peterson v. Willie , 81 F.3d 1033, 1036 (11th Cir. 1996).
Based upon this Court's review of the record, including the arguments of counsel, the Court finds that the statements of counsel were far from "plainly unwarranted and clearly injurious" since they were relevant to the issues in the case. Defendants' arguments, which were based upon the evidence, were warranted to advance their theory that Plaintiff was an experienced and knowledgeable purchaser of expensive jumping horses, was not duped when he entered the transaction in question, and knew what to expect in terms of the performance level and limitations of the horse he purchased. Therefore, the Court will not grant Plaintiff's request for a new trial. See BankAtlantic v. Blythe Eastman Paine Webber, Inc. , 955 F.2d 1467, 1474 (11th Cir. 1992) (affirming denial of a new trial in part because the offending remarks were based on record evidence that was relevant to the case).
C. Fee/Cost Entitlement
Defendants seek to recover their attorney's fees pursuant to section 768.79 of the Florida Statutes. The Florida offer of judgment statute entitles a defendant to an award of reasonable attorney's fees and costs if the defendant's offer is not accepted and if the judgment ultimately obtained is one of no liability or is at least twenty-five percent less than the offer.[2] See § 768.69, Fla. Stat. The record reflects that Defendant Syquia proposed a settlement offer of $500 and Defendant Redman offered $5,000, neither of which Plaintiff *1255 accepted. Later, a judgment of no liability was entered in favor of Defendants after a jury found against Plaintiff on all counts.
The purpose behind the offer of judgment statute is to encourage early settlement and termination of the litigation. See MGR Equip. Corp., Inc. v. Wilson Ice Enterprises, Inc. , 731 So.2d 1262, 1264 (Fla. 1999). "If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees." See § 768.69, Fla. Stat. The offeree bears the burden of proving the absence of good faith with respect to the offer. Levine v. Harris , 791 So.2d 1175, 1177 (Fla. 4th DCA 2001) ; Donohoe v. Starmed Staffing, Inc. , 743 So.2d 623, 624 (Fla. 2d DCA 1999).
As explained by the Court of Appeals for the Eleventh Circuit, the good faith requirement under Florida law does not "demand that an offeror necessarily possess, at the time he makes an offer or demand under the statute, the kind or quantum of evidence needed to support a judgment. The obligation of good faith merely insists that the offeror have some reasonable foundation on which to base an offer." McMahan v. Toto , 311 F.3d 1077, 1083 (11th Cir. 2002). The same standard applies where the offer is nominal: "[a] nominal offer is appropriate where the offeror has a reasonable basis to believe that exposure to liability is minimal." Zachem v. Paradigm Properties Management Team, Inc. , 867 So.2d 1263, 1263 (Fla. 1st DCA 2004) ; see also McMahan , 311 F.3d at 1083 ("Although 'nominal offers are suspect where they are not based on any assessment of liability and damages,' Fox v. McCaw Cellular Communications of Fla., Inc. , 745 So.2d 330, 332 (Fla. 4th DCA 1998), they can be valid if the offerors have 'a reasonable basis at the time of the offer to conclude that their exposure was nominal.' Id. at 333.") ).
1. Correct Standard
Plaintiff insists that in cases where a nominal offer is made a reasonable basis exists only where the "undisputed record" strongly indicates that the defendant had "no exposure." Plaintiff cites to language from a First District case, General Mechanical Corp. v. Williams , 103 So.3d 974, 976 (Fla. 1st DCA 2012), which in turn cites to a Third District case, Event Services America, Inc. v. Ragusa , 917 So.2d 882, 884 (Fla. 3d DCA 2005). However, after the General Mechanical opinion was issued, in Taylor Engingeering Inc. v. Dickerson Florida, Inc. , 221 So.3d 719, 723 (Fla. 1st DCA 2017), the First District receded from the "undisputed record"/"no exposure" standard. In Taylor , the First District explained that " Event Services -the case on which General Mechanical relies-appears to be a deviation from the standard generally used in the Third District" and opined "the appropriate standard is whether the offeror had a reasonable basis to conclude that his/her exposure was nominal or minimal." Id. Likewise, and as noted in Taylor , aside from Event Services , the Third District has consistently held that the standard is whether there is a reasonable basis to conclude that a defendant's exposure was nominal. See, e.g., Isaias v. H.T. Hackney Co. , 159 So.3d 1002, 1004-05 (Fla. 3d DCA 2015) ("The determination of whether a 'nominal' offer is in good faith requires the trial court to consider whether the offeror had a reasonable basis to conclude, at the time of making the offer, that its exposure was nominal." (footnote omitted) ); Downs v. Coastal Sys. Int'l, Inc. , 972 So.2d 258, 262 (Fla. 3d DCA 2008) (applying standard requiring a reasonable *1256 conclusion of nominal exposure); Dep't of Highway Safety & Motor Vehicles, Fla. Highway Patrol v. Weinstein , 747 So.2d 1019, 1020 (Fla. 3d DCA 1999) (applying standard requiring reasonable basis to conclude that exposure was nominal).
Moreover, the other Florida District Courts of Appeal consistently apply a standard requiring a reasonable basis to conclude that a defendant's exposure was nominal. See Gawtrey v. Hayward , 50 So.3d 739, 743 (Fla. 2d DCA 2010) ("In assessing whether Ms. Gawtrey's nominal offer was made in good faith, the trial court was required to look at whether Ms. Gawtrey had a reasonable basis when the offer was made to conclude that her exposure in the case was nominal."); Nants v. Griffin , 783 So.2d 363, 365 (Fla. 5th DCA 2001) ("[A] minimal offer can be made in good faith if the evidence demonstrates that, at the time it was made, the offeror had a reasonable basis to conclude that its exposure was nominal."). Notably, in Citizens Property Insurance Corp. v. Perez , 164 So.3d 1, 3 (Fla. 4th DCA 2014), the Fourth District reversed the trial court's denial of attorney's fees based upon the trial court's improper use of the "undisputed record"/"no exposure" standard. The Citizens court explained:
The trial court used the incorrect standard in determining whether Citizens' proposal for settlement was made in good faith. Perez cited to the trial court, and the trial court seems to have relied on, language from a Third District case, Event Services America, Inc. v. Ragusa , 917 So.2d 882 (Fla. 3d DCA 2005). In Event Services , the Third District stated: A reasonable basis for a nominal offer exists only where 'the undisputed record strongly indicate[s] that [the defendant] had no exposure' in the case. Id. at 884 (quoting Peoples Gas Sys., Inc. v. Acme Gas Corp. , 689 So.2d 292, 300 (Fla. 3d DCA 1997) ) (emphasis added). However, the Fourth District has consistently held that: "The rule is that a minimal offer can be made in good faith if the evidence demonstrates that, at the time it was made, the offeror had a reasonable basis to conclude that its exposure was nominal." State Farm Mut. Auto. Ins. Co. v. Sharkey , 928 So.2d 1263, 1264 (Fla. 4th DCA 2006) (emphasis added) (quoting Connell v. Floyd , 866 So.2d 90, 94 (Fla. 1st DCA 2004) ).
164 So.3d 1 at 3.
Hence, given the state of the law in Florida, the Court cannot agree with Plaintiff that the correct standard to apply where a nominal offer is made is whether the "undisputed record" strongly indicates that the defendant had "no exposure." Rather, the correct standard under Florida law is whether the offerors had "a reasonable basis at the time of the offer to conclude that their exposure was nominal." McMahan , 311 F.3d at 1083 (citation and internal quotation marks omitted) (applying Florida law).
2. Application of the Standard to the Facts at Bar
Having set forth the correct standard in determining whether Defendants' proposals for settlement were made in the absence of good faith, the Court now turns to the issue of whether Plaintiff has met that burden. As more fully explained below, the Court finds that there was a reasonable basis, at the time of the offers, for Defendants to conclude that their exposure was minimal.
Defendant Syquia's assessment of the fraud and negligent misrepresentation claims lodged against him at the time of the offer of judgment was that it was unlikely that a jury would find liability based upon the facts of the case. The fraud *1257 and misrepresentation claims were premised upon Syquia's failure to advise Plaintiff that the horse allegedly had a lameness issue and a preexisting history and reputation as a "dirty stopper." However, there was credible evidence, which presented at trial, that Syquia, who had trained and competed with the horse for almost two years prior to the sale, did not know or have reason to believe the horse had a history of stopping for no reason in competitions. (See DE 289, Syquia Test., Trial Tr., vol. 3 104:6-13 (testifying under oath that the horse only stopped four times in competitions over two years (three of which were on videotape) and that none of those times were attributable to stopping for no reason).) Likewise, there was credible evidence, which was also presented at trial, that Syquia did not know or have reason to believe that the horse had a history of sore back or weak gluteal muscles. (See DE 289, Syquia Test., Trial Tr., vol. 3 12:18-20, 13:3-7 (testifying under oath that the horse did not have a sore back or weak gluteal muscles that were a concern to him).) Therefore, the Court finds that Defendant Syquia had a reasonable basis for concluding that Plaintiff would not be able to prove the fraud and misrepresentations claims based upon the horse's alleged history of "dirty stopping" and lameness.
Similarly, Defendant Redman's assessment of the claims lodged against her at the time of the offer of judgment (breach of contract, breach of express warranties, breach of implied warranty of fitness, breach of implied warranty of merchantability, violation of Magnuson Moss Warranty Act, unjust enrichment, respondeat superior, rescission, and Florida's Deceptive and Unfair Trade Practices Act) was that a jury was not likely to find in Plaintiff's favor based upon the facts of the case, among other reasons. Like the claims against Syquia, the claims against Redman were premised upon the horse's undisclosed alleged lameness and refusal to jump at competitions, as well as the alleged use of Simon Nizri as an undisclosed dual agent in the sale. However, according to Defendant Redman's Motion, prior to her offer of judgment Redman conducted extensive legal research, a factual investigation, and a review of document discovery obtained as a result of the litigation. (DE 277, Mot. at 2-4.) Redman based her offer of judgment on the following evidence, among other things: the horse's pre-purchase show record indicating strong recent performances with Syquia, the lack of a pre-purchase history of stopping without cause at competitions, the pre-purchase examination showing that the horse was sound (DE 258-1), the bill of sale (DE 57-2), the post-sale treatment of the horse, the post-sale examination showing lameness (DE 258-8), and Simon Nizri's admissions that he was not a dual agent. Although there was evidence that Redman had an insurance policy for the horse that contained exclusions for back and right hind conditions, it was not unreasonable to conclude that the insurance policy exclusions did not expose Defendants to more than minimal liability given the other evidence and Defendants' own experience and personal knowledge about the horse and the transaction. As a result, the Court finds that Defendant Redman had a reasonable basis for concluding that a jury would not find in favor of Plaintiff on the claims brought against her, which centered upon the horse's alleged history of "dirty stopping" and/or lameness and the use of a dual agent.
Plaintiff's arguments to the contrary are not availing. Plaintiff argues that the $500 and $5,000 offers made by Defendants Syquia and Redman, respectively, were not made in good faith for the following main reasons: (1) the offers were nominal *1258 compared to the potential liability and attorney's fees; (2) there was no likelihood that Plaintiff would accept the offers; (3) no supporting declarations were filed; (4) the offers were premature because discovery had not been propounded at the time of Syquia's offer and had not been completed at the time of Redman's offer; (5) the claims were highly fact-specific and would almost certainly require lengthy litigation and a jury trial; (6) Defendants' motions for summary judgment were denied; and (7) the issues that were litigated were novel and/or complex. The Court considers each argument in turn.
First, Plaintiff's argument that the offers were nominal does not establish bad faith. Plaintiff heavily relies upon the decision by the Fourth District Court of Appeal in Eagleman v. Eagleman , 673 So.2d 946, 948 (Fla. 4th DCA 1996), which opined that "trial courts should view with considerable skepticism nominal offers ...." However, in Fox v. McCaw Cellular Communications of Florida, Inc. , 745 So.2d 330 (Fla. 4th DCA 1998), the Fourth District explained the Eagleman decision with the following discussion:
Eagleman merely holds that nominal offers are suspect where they are not based on any assessment of liability and damages. When a nominal offer is not based on an evaluation of potential liability and damages, the offer raises a question as to the intentions of the offeror. In that circumstance, Eagleman holds that an issue of good faith arises for resolution by the trial court.
Id. at 332-33.
"[N]ominal offers of judgment are not alone determinative of bad faith." Id. at 333. The mere fact a plaintiff seeks a high amount of damages does not undermine a defendant's reasonable belief of minimal exposure. See McMahan v. Toto , 311 F.3d 1077, 1083 (11th Cir. 2002) (affirming district court's finding that $100 offer was made in good faith over argument that the nominal offer could not have been made in good faith because lawsuit involved millions of dollars in potential liability).
Here, as explained above, Defendants' offers were based upon a reasonable evaluation of potential liability and damages, and, as indicated in the case law, the nominal nature of the offers is not sufficient to show bad faith. See Fox , 745 So.2d at 333 (citing Weesner v. United Services Auto. Ass'n , 711 So.2d 1192 (Fla. 5th DCA 1998) (fact that offer is nominal not necessarily determinative of issue of good faith); State Farm Mut. Auto. Ins. Co. v. Marko , 695 So.2d 874 (Fla. 2d DCA 1997) (offer of $1 treated as in good faith); Peoples Gas System Inc. v. Acme Gas Corp. , 689 So.2d 292 (Fla. 3d DCA 1997) (offer of $2,500 in case later settled for $3.5 million not determinative of bad faith) ).
Second, contrary to Plaintiff's contention otherwise, "a mere belief that a figure offered or demanded will not be accepted does not necessarily suggest an absence of good faith ...." Ryan v. Lobo De Gonzalez , 841 So.2d 510, 522 (Fla. 4th DCA 2003) ("A mere belief that the figure offered or demanded will not be accepted does not necessarily suggest an absence of good faith, where the offeror fully intends to conclude a settlement if the offer is accepted as made, and the amount of the offer is not so widely inconsistent with the known facts of the case as to suggest on its face the sole purpose of creating a right to fees if it is not accepted." (quoting Levine v. Harris , 791 So.2d 1175, 1178 (Fla. 4th DCA 2001) ). Relatedly, the Florida Supreme Court has opined that "the reasonableness of the rejection is irrelevant to the question of entitlement."
*1259 TGI Friday's, Inc. v. Dvorak , 663 So.2d 606, 613 (Fla. 1995).
Third, the lack of a supporting declaration attached to the Motions for Fee Entitlement does not automatically defeat Defendants' Motions for Fee Entitlement. The case law requires Defendants to "come forward with a reasonable explanation for [their] offer," which they did in this case. See Allstate Ins. Co. v. Manasse , 715 So.2d 1079, 1082 (Fla. 4th DCA 1998) (suggesting that the good faith inquiry is properly made based upon the parties' arguments and a review of the evidence at trial without the need of any additional evidence). Plaintiff cites Pickett v. R.J. Reynolds Tobacco Co. , 948 F.Supp.2d 1314, 1325 (M.D. Fla. 2013), aff'd , 564 F. App'x 981 (11th Cir. 2014), for the untethered proposition that the Court cannot make a finding as to a subjectively reasonable motivation for the offers of judgment because the Motions for Fee Entitlement were not supported by declarations. While the Pickett court noted that the record there did not contain affidavits as to the reason for the offer, nothing in the Pickett opinion (or any other Florida case) indicates that the explanation for an offer of judgment must be contained within a sworn affidavit. On the contrary, in deciding whether the offer lacked good faith, the Pickett court instructed that a court should "consider the entire record in its analysis." Id. at 1324.
In any event, the Court notes that in response to Plaintiff's concern regarding the lack of an affidavit on the issue of good faith, Defendant Syquia filed his own affidavit and the affidavit of his attorney with his reply brief. In the former, Syquia declared under penalty of perjury that he based his proposal for settlement on his "firsthand knowledge of the facts surrounding the transaction." (DE 281-1, Decl. of Syquia ¶ 8.) In the latter, Amanda S. Luby, Esq., who is experienced in the area of equine law, provided the following basis for Syquia's offer of judgment (in relevant part):
At the time the Proposal was made, Mr. Syquia and I had engaged in several in-depth conversations regarding the background of the case and the transaction at the heart of the lawsuit. It was during these conversations that I learned the facts set forth in my December 17, 2015 correspondence. As part of my fact-finding prior to when the Proposal was made, I also had multiple conversations with counsel for Mrs. Redman and Michael Romm, who was the attorney for Simon Nizri, a defendant who settled with the Plaintiff and was dropped from the case in May 2016.
In addition to these conversations, I was also able to review a number of documents that supported Mr. Syquia's position prior to the time that the Proposal was served. These documents were the Bill of Sale and the Pre-Purchase Examination Report of Vorst ("PPE"), both of which Mr. Zendejas attached to his Complaint, as well as the horse's publicly available show record and text messages between Defendant Simon Nizri and Mr. Zendejas regarding the payment of commission. I also viewed various videos easily accessible on-line of Vorst competing before the Proposal was served.
As a result, I was aware of many facts in advance of discovery beginning in the case. For example, I was aware that Vorst had been examined by internationally respected equine veterinarian Dr. Jorge Gomez as part of a Pre-Purchase Examination requested and paid for by Mr. Zendejas, and that Dr. Gomez had found Vorst to be in satisfactory condition, with an exception noted by Dr. Gomez in the PPE. I was also aware that it was only after this examination *1260 that Mr. Zendejas made the final decision to purchase Vorst.
Additionally, I was aware that Vorst had a show record which was inconsistent with Plaintiff's allegations concerning the horse.
I was also aware that the Bill of Sale memorializing the transaction stated that Vorst was being sold "as is" and that the seller had not made any representations or warranties with respect to Vorst, nor were there any representations or warranties that Plaintiff nor his agent, Nizri, ever requested should be in the Bill of Sale.
The facts known to be by the date of the Proposal undermined Plaintiff's claims both legally and factually.
In addition to the facts known to me at the time. I had also familiarized myself with the case law that I believed supported Mr. Syquia's position, both with regard to the claims against him and his own affirmative defenses, prior to the Proposal being served. Some, but not all, of this legal research is referenced in my December 17, 2015 correspondence setting forth the basis for Mr. Syquia's Proposal.
Based on the relevant case law, Mr. Syquia's knowledge of the underling transaction as shared with me, my years of experience in the field of equine law, and my review of the Bill of Sale, PPE, show record, and the Nizri text messages regarding commissions, I was able to assess Mr. Syquia's exposure in the lawsuit at the time the Proposal was made. It was my reasonable and good faith belief at the time the Proposal was made that Mr. Syquia's exposure was minimal.
(DE 281-2.) Based upon the Court's review of Syquia's and Ms. Luby's affidavits, the Court finds that the record contains ample support for the objective and subjective reasonableness of Defendant Syquia's offer of judgment, which, incidentally, also lends support to the reasonableness of Defendant Redman's offer.
Fourth, the Court finds that the timing of the offers does not show the absence of good faith under the circumstances of this case. It is true that discovery had not been propounded at the time of Syquia's offer and had not been completed at the time of Redman's offer. Nevertheless, courts have granted motions for reasonable fees under section 768.79 in cases where substantial discovery had not been completed at the time of the offers of judgment. E.g., Ryan , 841 So.2d at 522-23 (reversing trial court's refusal to award attorney's fees under section 768.79 because even though substantial discovery had not been completed defendants had a reasonable foundation to believe they had a viable defense at the time the offers were made). For example, in Land & Sea Petroleum, Inc. v. Bus. Specialists, Inc. , 53 So.3d 348, 354-55 (Fla. 4th DCA 2011), a Florida appellate court reversed the trial court's refusal to award attorney's fees under section 768.79 even though little discovery had been exchanged. Id. The court reasoned that "[t]he seller never wavered from its argument that the brokerage commission contract was unenforceable because its contract with the buyer was unenforceable. The seller needed very little, if any, discovery to support that argument because the lack of essential terms in the contract with the buyer was apparent from the face of that contract." Id.
Here, as in Land & Sea Petroleum , Defendants have been steadfast in their argument that the bill of sale and the pre-purchase examination (both of which were attached to the complaint), the horse's publicly-available show record, and their own knowledge of the horse and the transaction disproved Plaintiff's claims. While *1261 protracted discovery may have been necessary to prepare this case for a jury trial, the record shows that little discovery was needed for Defendants to arrive at a reasonable assessment of liability.
Fifth, because there was a reasonable basis for concluding that their exposure was nominal, Plaintiff's argument that the claims in this case were highly fact-specific and required a jury trial, while true, does not indicate that the offers lacked good faith. Donovan Marine, Inc. v. Delmonico , 40 So.3d 69, 71 (Fla. 4th DCA 2010) ("When the employer made the proposal, it had a reasonable basis for admitting no liability. Although its employee admitted to making the statement, the employer never admitted the statement was defamatory or that it was made in the course and scope of the employee's employment. Rather, the employer maintained the statement was not defamatory because it was true, and further that it failed to cause any resulting damage. The jury verdict confirmed that employer's position."); see also Talbott v. Am. Isuzu Motors, Inc. , 934 So.2d 643, 647 (Fla. 2d DCA 2006) ("Isuzu made an initial offer of $500 and a subsequent offer of $1500 because it evaluated no liability, a conclusion also reached by the jury."); Dean v. Vazquez , 786 So.2d 637, 640 (Fla. 4th DCA 2001) ("[A]s confirmed by the jury verdict the Defendants had a reasonable basis to conclude their exposure was nominal.").
Sixth, and similarly, the fact that Defendants' motions for summary judgment were denied is not a sufficient basis to support a finding of a lack of good faith because the record provided a reasonable basis for their offers. Isaias v. H.T. Hackney Co. , 159 So.3d 1002, 1005 (Fla. 3d DCA 2015) ("The fact that a motion for summary judgment had been denied without elaboration does not control the assessment of the proposals for settlement. We therefore conclude that Hackney failed to demonstrate that the settlement proposals by REW Dairy and Toni Gas were not made in good faith, and we reverse that determination in the orders below.").
Seventh, the novelty of the factual situation in this case does not undermine the reasonable basis of Defendants' offers under the circumstances of this case. As an initial matter, Plaintiff's attempt to analogize the factual issues in this case to the novelty of the legal theories at issue in JES Properties, Inc. v. USA Equestrian, Inc. , 432 F.Supp.2d 1283 (M.D. Fla. 2006) falls flat. In JES Properties , the plaintiffs sought to "recover under antitrust laws based upon the alleged anticompetitive impact of the [d]efendants' adherence to the rules promulgated by the national governing body of equestrian sport in the United States." Id. at 1290. In addressing another issue in the case, the court described the novelty of the issues presented in the case as follows: "the facts of this case did not squarely fall within binding case precedent [and] [p]laintiffs attempted to stretch the parameters of existing antitrust law in bringing their claims." Id. at 1291. Hence, the district court there found that the offers of judgment were not made in good faith in part because of "the novelty and difficulty of the issues in th[e] case." Id. at 1295.
Here, unlike the case in JES Properties , Plaintiff was not attempting to stretch the parameters of existing precedent or make novel legal arguments in bringing his claims, which may have made Defendants' task of assessing liability difficult. The dispute in this case was, at its essence, a factual one; although the case might have involved numerous claims and protracted factual discovery concerning equine performance, the case did not raise any novel legal theories difficult to assess.
*1262 As to the factual issues in the case, Defendants were personally familiar with the horse in question, the horse's abilities, and the subject of equine performance in general and had ready access to the horse's show record. Moreover, Defendant Syquia's attorney, Amanda S. Luby, Esq., who made the offer, had "handled a significant number of cases in the equine law field throughout [her] career." (DE 281-2, Decl. of Amanda S. Luby, Esq. ¶ 3.) Thus, Defendants were uniquely positioned to make early judgment calls about their exposure in the case.
II. CONCLUSION
For the foregoing reasons, the Court concludes that Plaintiff is not entitled to judgment as a matter of law or a new trial. Further, Defendants have established a reasonable foundation for their offers of judgment and therefore their Motions for Fee Entitlement under section 768.79 of the Florida Statutes are granted.[3]
The parties shall confer on Defendants' pending Motions for Reasonable Attorney's Fees and Costs (DE 265, 271, 303, 308) as indicated below.
Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Judgment as a Matter of Law and in the Alternative Motion for a New Trial (DE 270) is DENIED . Defendant Redman's and Syquia's respective Motions for Entitlement to Attorney's Fees and Costs (DE 263 & 264) are GRANTED . Plaintiff's motion to stay (DE 286) is DENIED as moot.
In light of the Court's Order herein, the parties shall confer on Defendants' pending Motions for Reasonable Attorney's Fees and Costs (DE 265, 271, 303, 308). After conferring, the parties shall file, within fifteen (15) days of the entry date of this Order, a Joint Notice indicating whether the parties have arrived at a mutual agreement on the remaining fees and costs issues. If the parties cannot reach an agreement, the Court will refer these motions to the assigned United States Magistrate Judge.
DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of September, 2018.

The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Prichard , 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

There is no dispute among the parties that in this diversity action, the Court looks to the substantive law of Florida to determine the attorney's fees issue.

The alternative request for fees under section 501.2105 of the Florida Statutes is moot.